UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**GRACE MCCORMICK,** on behalf of herself and all others similarly situated,

Plaintiff,

v.

**DAVID'S BRIDAL, LLC AND CLAYTON, DUBILIER & RICE, INC.,**

Defendant.

---

Docket No.

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff, GRACE MCCORMICK, ("Plaintiff" or "Ms. McCormick"), individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), by and through his undersigned counsel, **Robert Schonfeld, Esq.** of JOSEPH & NORINSBERG, LLC, brings this action against DAVID'S BRIDAL, LLC AND CLAYTON, DUBILIER & RICE, INC., ("DAVID'S" or "Defendant") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., arising from Defendant's failure to ensure that its ecommerce Website, www.davidsbridal.com, is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff **GRACE McCORMICK** is a legally blind resident of Bronx County, New York, currently residing in assisted living at 3185 Villa Avenue, Bronx, NY 10468. According to a comprehensive low-vision evaluation conducted by **Dr. Leon Aleksandrovich, MD, OD**, on **June 10, 2024**, Ms. McCormick has advanced cone-rod dystrophy, a progressive retinal disorder causing severe central and peripheral vision loss, photophobia, and color-vision deficiency. Dr.

Aleksandrovich documents that Ms. McCormick suffers from **near-total blindness**, is **unable to read standard print**, and "functions primarily through auditory and tactile input." He further notes that she is **unable to travel independently** and requires structured support for mobility and daily living. These findings meet the federal and New York State definitions of legal blindness. (See Exhibit A.)

2. Because of her permanent and irreversible vision loss, Ms. McCormick relies exclusively on **screen-reader software**, including **JAWS**, to navigate digital interfaces, read product information, and complete online transactions. When a website is properly coded, JAWS can identify product images, read labels, announce interactive controls, and allow blind consumers to shop independently. When a website is not properly coded, JAWS cannot interpret essential content, rendering the site unusable for blind users.

3. Defendant **DAVID'S BRIDAL, LLC** owns, operates, and controls the commercial retail website www.davidsbridal.com, which markets and sells wedding dresses, bridesmaid attire, formalwear, accessories, and related products to consumers throughout the United States, including New York. The Website functions as an online retail store and a digital gateway to Defendant's nationwide network of physical locations. Defendant is responsible for ensuring that the Website complies with federal, state, and local accessibility laws.

4. **Defendant CLAYTON, DUBILIER & RICE, INC.** ("CD&R") is a Delaware corporation and private-equity firm. Upon information and belief, CD&R has served as a controlling owner, private-equity sponsor, and/or corporate affiliate of David's Bridal and has exercised, or continues to exercise, control over David's Bridal's digital operations, corporate policies, branding, and online retail infrastructure, including the Website at

www.davidsbridal.com. . CD&R is a "person" within the meaning of the ADA, NYSHRL, NYCHRL, and NYCRL.

5. On **December 15, 2025**, **December 16, 2025**, and **January 5, 2026**, Ms. McCormick visited www.davidsbridal.com using JAWS with the intent to browse and purchase specific formalwear, including the Beaded Corset Bodice Satin Wedding Dress (Style WG4137)—a product prominently featured on Defendant's Website and repeatedly identified in accessibility audits. Ms. McCormick was shopping for a formal event at her assisted-living residence and selected David's Bridal because of its national reputation, extensive inventory, and the availability of dresses in petite and adaptive-friendly silhouettes suitable for blind consumers who rely on tactile fit and fabric descriptions.

6. During each visit, Ms. McCormick encountered multiple accessibility barriers that prevented her from meaningfully browsing or purchasing merchandise. JAWS announced product images only as "**graphic**," size selectors only as unlabeled "**button**," and the "**Add to Bag**" control without any accessible name or purpose. As a result, she could not determine what the products looked like, could not select a size, and could not add any item to her cart. Defendant provided no accessible alternative means for blind consumers to obtain the same information.

7. Automated accessibility audits confirm the barriers Ms. McCormick personally encountered. A **SortSite** audit of the Website identified hundreds of WCAG 2.1 Level A, AA, and AAA violations across 928–1004 pages**,** including:

**373 pages** with missing link names,

**627 pages** with empty buttons,

**550 pages** with invalid HTML structure,

**550 pages** with form controls lacking labels,

**89+ pages** missing document titles,

**systemic ARIA violations**,

**contrast failures**, and

**keyboard focus problems**. (See SortSite Report.)

A **WAVE** scan of a David's Bridal category page returned **38 Errors**, **23 Empty Links**, **12 Empty Buttons**, **23 Contrast Errors**, and **67 Alerts**, including missing alternative text and unlabeled interactive controls. A WAVE scan of a product page returned **46 Errors**, **27 Empty Links**, **13 Empty Buttons**, **25 Contrast Errors**, and **194 Alerts**, including missing form labels, broken ARIA references, and empty headings. (See Reports as Exhibit B)

8. Defendant has been on notice of these accessibility obligations for years. In *Mendizabal v. David's Bridal, Inc.*, No. 1:17-cv-09494 (S.D.N.Y.), a blind consumer alleged that this same Website contained many of the same barriers present today, including missing alt-text, empty links, redundant links, and unlabeled interactive controls. Despite this prior litigation, Defendant has failed to remediate its Website and continues to operate a platform that excludes blind and visually impaired consumers.

9. Defendant's failure to design, maintain, and operate its Website in a manner accessible to blind and visually impaired consumers denies Ms. McCormick—and all similarly situated individuals—the full and equal enjoyment of Defendant's goods, services, privileges, and advantages, in violation of Title III of the Americans with Disabilities Act**,** the New York State Human Rights Law**,** the New York City Human Rights Law**,** and the New York State Civil Rights

Law**.**

10. Plaintiff seeks a permanent injunction requiring Defendant to remediate the Website's accessibility barriers, adopt accessibility policies and governance, and ensure that the Website is—and remains—fully accessible to blind and visually impaired consumers in substantial conformance with WCAG 2.1 Level AA**.**

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, as Plaintiff alleges violations of Title III of the Americans with Disabilities Act ("ADA"), a federal civil rights statute. Supplemental jurisdiction over Plaintiff's state and city law claims is proper under 28 U.S.C. § 1367.

12. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims under the New York State Human Rights Law, Article 15 (Executive Law § 290 *et seq.*) ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, ("NYCHRL") & § 296 *et seq.*; and the New York State Civil Rights Law, Article 4, § 40-c and § 40-d ("NYCRL").

13. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and **(c)** because Plaintiff resides in Bronx County**,** accessed and attempted to use the Website from her home within this District, and suffered injury here. A substantial part of the discriminatory conduct giving rise to this action—including the denial of equal access to Defendant's online goods, services, and digital content—occurred within this District.

14. Defendant David's Bridal, LLC conducts substantial, continuous, and systematic business within this District by marketing, advertising, and selling wedding dresses, formalwear,

accessories, and related products to New York consumers through its highly interactive retail Website, www.davidsbridal.com. Defendant purposefully avails itself of the privilege of conducting business in New York by transmitting digital content, files, and data to consumers located in this District, fulfilling online orders to New York addresses, and engaging in nationwide e-commerce directed at New York residents. Courts within this Circuit have consistently held that such purposeful, repeated online commercial activity constitutes sufficient minimum contacts for personal jurisdiction. See *Reed v. 1-800-Flowers.com, Inc.***,** 327 F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC***,** 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court***,** 592 U.S. ___ (2021); *South Dakota v. Wayfair, Inc.***,** 585 U.S. ___ (2018); *Romero v. 88 Acres Foods, Inc.***,** 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); *Sanchez v. NutCo, Inc.***,** 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022)

15. CD&R conducts substantial business in New York through its ownership and control of David's Bridal and its Website.

16. Accordingly, jurisdiction and venue are proper in this District because Plaintiff resides here, accessed the Website from within this District, and suffered injury here. Courts within this Circuit have consistently held that website accessibility barriers encountered by users within the District provide a sufficient basis for personal jurisdiction over out-of-state website operators whose digital platforms target or serve New York consumers.

## THE PARTIES

17. Plaintiff GRACE McCORMICK is a legally blind resident of Bronx County, New York. As documented in a June 10, 2024, low-vision evaluation by Dr. Leon Aleksandrovich, MD, OD**,** Ms. McCormick has advanced cone-rod dystrophy**,** a progressive retinal disorder causing

severe central and peripheral vision loss, photophobia, and color-vision deficiency. Dr. Aleksandrovich reports that Ms. McCormick suffers from near-total blindness**,** is unable to read standard print or perceive visual **detail**, and "functions primarily through auditory and tactile input." He further notes that she is unable to travel independently and requires structured support for mobility and daily living. Because of her irreversible vision loss, Ms. McCormick relies exclusively on **screen-reader software**, including **JAWS**, to navigate digital interfaces, read product information, and complete online transactions independently. (See Exhibit A.)

18. **Defendant DAVID'S BRIDAL, LLC** is a national retail clothing chain and business entity that owns, operates, controls, and maintains the commercial retail website www.davidsbridal.com, which markets and sells wedding dresses, bridesmaid attire, formalwear, accessories, and related products to consumers nationwide, including residents of New York. The Website functions as a fully interactive online retail store and a primary channel through which Defendant advertises, promotes, and sells its merchandise.

19. **Defendant CLAYTON DUBILIER & RICE, INC.**. ("CD&R") is a Delaware corporation that, upon information and belief, has served as a controlling owner, private-equity sponsor, and/or parent entity of David's Bridal. CD&R exercises or has exercised control over David's Bridal's digital operations, branding, corporate policies, and online retail infrastructure, including the Website at www.davidsbridal.com. . CD&R is a "person" under the ADA, NYSHRL, NYCHRL, and NYCRL.

20. Defendant markets, advertises, and sells its products directly to New York consumers through its Website, transmits digital content to users located in this District, and maintains a highly interactive online platform that enables consumers to browse products, review

descriptions, select sizes and colors, access promotions, and complete purchases. The Website includes detailed product pages—such as the Beaded Corset Bodice Satin Wedding Dress (Style WG4137) and other formalwear items—containing images, descriptions, specifications, pricing, and purchasing information. Defendant is responsible for ensuring that the Website is designed, coded, and maintained in a manner accessible to individuals who rely on screen-reading technology.

21. At all relevant times, Defendant has continuously conducted business within the Southern District of New York by offering its goods and services to residents of this District through its Website and by repeatedly transmitting digital content, files, and data to consumers located here. Defendant's ongoing operation of a nationwide e-commerce platform directed at New York consumers constitutes continuous and systematic business activity within this District.

## NATURE OF ACTION

22. This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., challenging Defendant's operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District, attempted to access Defendant's website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its website in accordance with the Web Content Accessibility Guidelines (WCAG 2.1) constitutes unlawful discrimination and violates federal accessibility standards.

23. The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, learning, banking, researching, and

communicating—for sighted, blind, and visually impaired individuals alike.

24. In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services offered online.

25. Users of Windows-enabled computers have access to several screen-reading programs, including Job Access With Speech ("JAWS"), which is commercially available, and NonVisual Desktop Access ("NVDA"), which is open-source. These tools are indispensable for blind users and represent the only means by which they can independently navigate the Internet.

26. Plaintiff, GRACE MCCORMICK, is a blind, visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the NYCHRL. To access the Internet, Plaintiff relies on screen-reading software such as NVDA for Windows.

27. For screen-reading software to function, website content must be capable of being rendered into text. If the underlying code fails to support this conversion, blind users are unable to access the same content available to sighted users. Screen-reading software "translates the visual Internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user." *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365, 375 (E.D.N.Y. 2017). As Judge Weinstein explained:

> "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring her to another webpage, through visual cues, such as a change in the color of the text… The screen reading software uses auditory—rather than visual—cues to relay this same information… Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard."
>
> See also American Federation for the Blind, *Screen Readers*, AFB Technology Guide (last accessed June 12, 2025), estimating that 26 million American adults report sight deficiency.

28. The World Wide Web Consortium ("W3C") has published the Web Content Accessibility Guidelines ("WCAG") 2.0 and 2.1, which establish internationally recognized standards for digital accessibility. These guidelines are widely adopted by private entities and government agencies, including the U.S. Department of Justice, and have been recognized by courts as the appropriate benchmark for ADA compliance.

29. Non-compliant websites pose recurring barriers to blind and visually-impaired users. Common violations include, but are not limited to:

a. Missing text equivalents for non-text elements

b. Unlabeled frames and navigation regions

c. Scripts without accessible alternatives

d. Inaccessible forms and input fields

e. Content conveyed solely through visual presentation

f. Inability to resize text without loss of functionality

g. Time limits that cannot be adjusted or disabled

h. Missing or ambiguous page titles

i. Links lacking descriptive context

j. Keyboard focus indicators that are not discernible

k. Undetectable default language settings

l. Components that trigger unexpected context changes

m. Settings that alter context without user notice

n. Input fields lacking labels or instructions, including inaccessible CAPTCHA prompts

o. Improperly nested markup, duplicate attributes, and non-unique IDs

p. Inaccessible Portable Document Format (PDF) files

q. User interface elements whose roles and states cannot be programmatically determined items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

## STATEMENT OF FACTS

30. Plaintiff **GRACE McCORMICK** is a legally blind consumer residing in Bronx, New York. As documented in a June 10, 2024, low-vision evaluation by Dr. Leon Aleksandrovich, MD, OD**,** Ms. McCormick has advanced cone-rod dystrophy**,** a progressive retinal disorder that causes severe central and peripheral vision loss, photophobia, and color-vision deficiency. Dr. Aleksandrovich reports that Ms. McCormick suffers from near-total blindness, is unable to read standard print or perceive visual detail**,** and "functions primarily through auditory and tactile input." Because of this permanent impairment, Ms. McCormick relies exclusively on **JAWS screen-reader software** to navigate digital interfaces, read product information, and complete

online transactions. (See Exhibit A.)

31. Cone-rod dystrophy is a permanent, non-reversible condition for which there is no curative treatment. Ms. McCormick's remaining light perception is insufficient for reading print, recognizing images, or visually interpreting digital interfaces. As a result, she depends entirely on properly coded, screen-reader-compatible websites to shop independently, evaluate products, and access online information on equal terms with sighted consumers.

32. In late 2025 and early 2026, Ms. McCormick became interested in purchasing formalwear from David's Bridal for an upcoming event at her assisted-living residence. She specifically sought to evaluate and purchase the **Beaded Corset Bodice Satin Wedding Dress (Style WG4137)**, a product prominently featured on Defendant's Website and repeatedly identified in accessibility audits. As a blind consumer who relies on tactile fit, fabric descriptions, and detailed product information, she selected David's Bridal because of its national reputation, extensive inventory, and availability of dresses in silhouettes suitable for her needs.

33. On December 15, 2025, December 16, 2025, and January 5, 2026, Ms. McCormick visited www.davidsbridal.com using JAWS with the intent to browse categories, review product details, compare styles, and determine whether to purchase the WG4137 dress and related items. During these visits, she attempted to access specific product pages, including but not limited to:

- **Beaded Corset Bodice Satin Wedding Dress (WG4137)**
- **Lace Illusion Back Chiffon Wedding Dress (WG4011DB)**
- **Matte Satin Draped Sheath Tank Dress (EDS711024)**

These items matched the fabric, silhouette, and functional characteristics she was seeking.

34. Despite her clear intent to shop, Ms. McCormick was unable to meaningfully

navigate or interact with Defendant's Website due to pervasive accessibility barriers. JAWS repeatedly failed to announce interactive elements, misinterpreted or skipped essential controls, and encountered structural defects that prevented her from accessing product information. Specifically, she encountered:

- **Product images lacking descriptive alt text**, causing JAWS to announce only "graphic."
- **Unlabeled or empty buttons**, including size selectors and "Add to Bag."
- **Empty links and empty headings** that provided no navigational context.
- **Broken ARIA references and misused ARIA roles** that prevented JAWS from identifying menus, landmarks, and interactive elements.
- **Keyboard traps and focus issues** that caused JAWS to jump unpredictably across the page.
- **Low-contrast text**, rendering essential information unreadable for users with low vision.

These barriers appear on the exact product pages Plaintiff attempted to access and are corroborated by objective evidence.

35. A **WAVE** scan of a David's Bridal category page revealed: **• 38 Errors • 23 Empty Links • 12 Empty Buttons • 23 Contrast Errors • 67 Alerts** including missing alternative text, missing form labels, and unlabeled interactive controls.

36. A WAVE scan of a product page revealed: **• 46 Errors • 27 Empty Links • 13 Empty Buttons • 25 Contrast Errors • 194 Alerts** including broken ARIA references, empty headings, and missing form labels. These findings confirm that the barriers Plaintiff encountered are real, repeatable, and systemic.

37. A **SortSite** audit of the Website identified **hundreds of accessibility issues across**

**928–1004 pages**, including broken links, blank labels, ARIA violations, inaccessible modals, keyboard traps, and Level A, AA, and AAA WCAG failures. These findings demonstrate that the Website's inaccessibility is **pervasive, not isolated**.

38. As a direct result of these barriers, Ms. McCormick was unable to browse products, activate filters, read descriptions, select sizes, or access essential information needed to evaluate or purchase formalwear. Her exclusion was real, repeatable, and directly caused by Defendant's failure to implement industry-standard accessibility practices.

39. Defendant's Website is not a passive marketing tool. It is a fully interactive retail platform central to Defendant's business model, offering product listings, detailed descriptions, specifications, promotional content, appointment scheduling, and checkout functionality. Defendant relies on www.davidsbridal.com to market and distribute its products nationwide, including to consumers in New York.

40. In *Mendizabal v. David's Bridal, Inc.*, No. 1:17-cv-09494 (S.D.N.Y.), both David's Bridal and CD&R were sued for operating an inaccessible website. Despite this prior litigation, Defendants failed to remediate the Website and continue to operate a platform that excludes blind consumers.

41. On information and belief, Defendant has operated www.davidsbridal.com for years without implementing WCAG-compliant accessibility protocols. Despite longstanding federal guidance, readily available automated testing tools, and a **prior ADA lawsuit filed against David's Bridal in Mendizabal v. David's Bridal, Inc.**, Defendant has failed to remediate the barriers identified in this action. The very same issues persist across product listings, category pages, and navigational flows, reflecting a systemic disregard for blind and visually impaired

users.

42. Plaintiff's intent to return to www.davidsbridal.com is concrete, credible, and ongoing. Her interest is not abstract or generalized; it is tied to specific products, specific attempted transactions, and specific functional needs arising from her blindness.

43. Plaintiff continues to seek the **Beaded Corset Bodice Satin Wedding Dress (WG4137)**, a product she attempted to evaluate during her prior visits. Because Plaintiff cannot visually inspect dresses in stores, she depends entirely on accessible online product pages to evaluate features such as fabric type, silhouette, sizing, color availability, and included details. She intends to return to the WG4137 product page to complete the purchase once the Website is accessible.

44. Plaintiff also remains interested in purchasing additional formalwear items she attempted to evaluate during her prior visits, including the **Lace Illusion Back Chiffon Wedding Dress (WG4011DB)** and the **Matte Satin Draped Sheath Tank Dress (EDS711024)**. These items are available primarily through Defendant's Website, which is the central source for sizing, fabric descriptions, and product images. Plaintiff intends to revisit these product pages to confirm suitability and complete purchases once the Website is accessible.

45. Plaintiff's need for accessible online shopping is permanent and ongoing. Her cone-rod-dystrophy-related vision loss prevents her from browsing physical retail stores, reading packaging, or visually inspecting formalwear. As a result, she relies exclusively on accessible e-commerce platforms to evaluate and purchase clothing. David's Bridal's Website offers a broader, more current, and more detailed selection of its products than any third-party retailer, making it the only meaningful channel through which Plaintiff can access the full range of David's

Bridal merchandise

46. Plaintiff's prior attempts to shop on the Website were genuine and purposeful, motivated by her desire to purchase the WG4137 dress and related items. She attempted to read product descriptions, review specifications, and add items to her cart, but was prevented from doing so by the Website's accessibility barriers. Her inability to complete these purchases does not diminish her interest; it reinforces her motivation to return once the barriers are removed.

47. Plaintiff's intent to return is not speculative. It is grounded in: • her prior visits, • her attempted purchases, • her ongoing need for formalwear, • her reliance on accessible online shopping, and • the fact that David's Bridal's Website is the exclusive or primary source for the products she seeks.

## CLASS ACTION ALLEGATIONS

48. Plaintiff **GRACE McCORMICK** brings this action on behalf of herself and all others similarly situated, seeking certification of a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2):

> All legally blind individuals in the United States who have attempted to access www.davidsbridal.com and were denied equal access to its digital content, product information, and online purchasing functions due to persistent accessibility barriers during the relevant statutory period.

49. Plaintiff also seeks certification of a New York Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2):

**New York Subclass:**

All legally blind individuals residing in the State of New York who have attempted to access www.davidsbridal.com and were similarly denied equal access to its offerings due to the same systemic accessibility barriers.

50. Common questions of law and fact exist among the Class, including, but not limited to:

- Whether www.davidsbridal.com qualifies as a "public accommodation" or a service of a place of public accommodation under Title III of the ADA;
- Whether the Website's persistent accessibility barriers violate the ADA by denying blind users full and equal access to Defendant's products, services, and support;
- Whether the same barriers violate the NYCHRL, NYCRL, and NYSHRL by excluding blind users from meaningful participation in the digital marketplace.

51. Plaintiff's claims are typical of the Class. Like other blind individuals, she relies on screen-reading software and keyboard navigation to access online platforms. She encountered the same systemic barriers—missing alternative text, empty links, empty buttons, unlabeled form fields, inaccessible menus, mouse-dependent controls, and unreadable product specifications—that affect all Class members.

52. Plaintiff will fairly and adequately represent the interests of the Class. She has retained counsel experienced in disability rights and complex class action litigation. Plaintiff has no interests antagonistic to those of the Class and seeks injunctive and declaratory relief applicable to all members.

53. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or failed to act on grounds generally applicable to the Class, warranting injunctive relief

to remediate the website's accessibility barriers.

54. Alternatively, certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over individual issues, and a class action is the most efficient and fair method for adjudicating these claims.

55. Maintaining this action as a class proceeding will promote judicial economy by avoiding duplicative litigation and ensuring uniform relief for a class likely to include hundreds, if not thousands, of blind individuals who have attempted to use Defendant's Website and faced exclusion due to its inaccessibility.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.)***

56. Plaintiff, GRACE MCCORMICK, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

57. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

58. Defendant's Website that is offered as a link to the company is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

59. Defendants David's Bridal, LLC and Clayton, Dubilier & Rice, Inc. own, operate, and/or control the Website and are jointly responsible for ensuring its accessibility.

60. Defendants have been on notice of these accessibility barriers since at least the

*Mendizabal* litigation yet failed to implement WCAG-compliant remediation.

61. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

62. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

63. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)–(2)(A). Plaintiff has been denied full and equal access to Defendant's Website, www.davidsbridal.com, has not been provided services that are provided to non-disabled patrons, and has been provided services that are inferior to those offered to sighted individuals.

64. Defendant has failed to take prompt and equitable steps to remedy its

discriminatory conduct. These violations are ongoing. Upon information and belief, Defendant has received prior notice of these accessibility barriers through consumer complaints, automated audit findings, industry-standard compliance tools, and a prior ADA lawsuit—**Mendizabal v. David's Bridal, Inc.**, No. 1:17-cv-09494 (S.D.N.Y.)—which alleged many of the same accessibility failures present today. Despite this notice, Defendant has failed to implement WCAG-compliant remediation, demonstrating a pattern of disregard for its obligations under federal law.

65. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

**SECOND CAUSE OF ACTION**
**(New York State Human Rights Law)**
**("NYSHRL")**

66. Plaintiff, GRACE MCCORMICK, on behalf of herself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

67. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

68. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

69. Defendant **David's Bridal, LLC**, at all relevant times, owned, operated, and

controlled a place of public accommodation—its commercial retail Website, www.davidsbridal.com —within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

70. Defendants jointly own, operate, and/or control a place of public accommodation within the meaning of the NYSHRL.

71. Defendants' failure to remediate the Website despite prior litigation constitutes intentional discrimination.

72. Plaintiff visited www.davidsbridal.com on multiple occasions—**December 15, 2025**, **December 16, 2025**, and **January 5, 2026**—and encountered persistent accessibility barriers that prevented her from accessing the Website's goods, services, and privileges on equal terms with sighted consumers.

73. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

74. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

75. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is

inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

76. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

77. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

78. Defendant has intentionally and willfully discriminated against the Plaintiff and

Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

79. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

80. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

**<u>THIRD CAUSE OF ACTION</u>**
**(Violation of New York State Civil Rights Law)**
**("NYCRL")**

81. Plaintiff, GRACE MCCORMICK, on behalf of herself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

82. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41.

83. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

84. No person may be subjected to discrimination against in their civil rights because

of disability, as defined in § 292(21) of the Executive Law, by any firm, corporation, or institution. N.Y. Civ. Rights Law § 40-c.

85. Under § 292 of Article 15 of the New York Executive Law, a disability includes any physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. Plaintiff's advanced cone-rod dystrophy and near-total blindness constitute a disability under the NYCRL.

86. Defendant discriminates against Plaintiff and the Subclass under NYCRL § 40 because Defendant's Website, www.davidsbridal.com, is a place of public accommodation that does not provide full and equal accommodations, advantages, facilities, and privileges to blind and visually impaired individuals. Defendant's Website excludes sight-impaired users who rely on screen-reading technology and denies them equal access to the goods, services, and benefits available to sighted consumers.

87. Defendant has intentionally and willfully failed to remove the accessibility barriers on its Website, thereby discriminating against Plaintiff and the Subclass in violation of NYCRL § 40. These barriers—documented across hundreds of pages through SortSite and WAVE audits—prevent blind consumers from accessing product information, navigating the Website, or completing purchases.

88. Defendant has failed to take any steps to halt or correct its discriminatory conduct and continues to discriminate against Plaintiff and the Subclass by maintaining a Website that is inaccessible to blind and visually impaired individuals.

89. Under N.Y. Civil Rights Law § 41,

*"a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be*

*liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside."*

90. Plaintiff and the Subclass hereby demand **compensatory damages of five hundred dollars ($500.00)** for Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Rights Law § 40 et seq.

**FOURTH CAUSE OF ACTION**
**(Violations of the New York City Human Rights Law)**
**("NYCHRL"}**

91. Plaintiff, GRACE MCCORMICK, on behalf of herself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

92. N.Y.C. Administrative Code § 8-107(4)(a) provides that

*"It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".*

93. Defendant is subject to the NYCHRL because it owns, operates, and controls the Website www.davidsbridal.com, making it a "person" within the meaning of N.Y.C. Admin. Code

§ 8-102(1).

94. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) by refusing to update or remove the accessibility barriers on its Website, rendering the Website and its integrated services completely inaccessible to blind and visually impaired consumers. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

95. Defendant is required to make reasonable accommodations to the needs of persons with disabilities. N.Y.C. Admin. Code § 8-107(15)(a) mandates that covered entities must provide reasonable accommodations to enable a person with a disability to enjoy the rights in question, where the disability is known or should have been known.

96. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

97. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

98. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the

full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

99. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

100. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

101. Plaintiff is also entitled to reasonable attorneys' fees and costs.

102. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## **FIFTH CAUSE OF ACTION**
**(Declaratory Relief)**

103. Plaintiff, GRACE MCCORMICK, on behalf of herself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

104. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws

including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*., and N.Y.C. Admin. Code § 8-107, *et seq*., prohibiting discrimination against the blind.

105. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a. A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b. A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c. A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d. An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e. Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f. Pre-judgment and post-judgment interest;

g. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h. Such other and further relief as this Court deems just and proper.

**<u>DEMAND FOR TRIAL BY JURY</u>**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York,
March 3, 2026

Respectfully submitted,
**JOSEPH & NORINSBERG, LLC**
*<u>/s/ Robert Schonfeld</u>*
Robert Schonfeld, Esq
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York, 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com